# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**JAMES LEWIS HOPKINS**                                                     **PLAINTIFF**
**#266215**

**V.**                           **NO. 4:22-cv-01291-LPR-ERE**

**ERIC HIGGINS,** *et al*.                                                  **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.**     **Procedures for Filing Objections:**

This Recommendation has been sent to United States District Judge Lee P. Rudofsky. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**II.**     **Discussion:**

    **A.**     **Background**

*Pro se* plaintiff James Lewis Hopkins, a pre-trial detainee housed at the Pulaski County Detention Facility ("PCDF"), filed this civil rights lawsuit under 42 U.S.C. § 1983. *Doc. 2*.

On December 30, 2022, Mr. Hopkins filed his original complaint, asserting multiple, unrelated grievances about his detention and naming Defendants Sheriff Eric S. Higgins, Lieutenant Denise Atwood, Deputy George Belt, and Deputy Hagarty. *Doc. 2*. However, Mr. Hopkins failed to attribute specific conduct to any named Defendant or explain how any Defendant violated his constitutional rights.

Mr. Hopkins proceeded to file four additional pleadings, but only his third-amended complaint (*Doc. 16*) alleges conduct on the part of individuals named as Defendants. Accordingly, the Court has treated Mr. Hopkins' third-amended complaint as the operative pleading in this lawsuit.

Mr. Hopkins' third-amended complaint names only two Defendants: Lieutenant Denise Atwood and Deputy George Belt. Mr. Hopkins sues each Defendant in his or her individual and official capacities. He alleges that on an unspecified date, Defendant Belt sprayed him in the eyes with a chemical at the same time he was being attacked by inmates in the shower. *Doc. 16 at 4*. Mr. Hopkins alleges that when Defendant Atwood arrived, "they" took him down the stairs with his hands cuffed behind his back. *Id*. Mr. Hopkins suffered a seizure while being walked down the stairs, and "they" dropped him on his face and refused to provide him any follow-up medical care. *Doc. 16 at 5*.

Based on Mr. Hopkins' allegations, the Court determined that Mr. Hopkins stated: (1) an excessive force claim against Mr. Belt; and (2) a medical deliberate

indifference claim against Mr. Belt and Ms. Atwood. The Court dismissed Mr. Hopkins' remaining claims. *Doc. 45*.

Defendants have now filed a motion for summary judgment, supporting brief, and statement of facts arguing that Mr. Hopkins failed to fully exhaust his administrative remedies before filing this lawsuit. *Docs. 50, 51, 52*. Mr. Hopkins responded to the motion, and Defendants have replied. *Docs. 54, 55, 56*. The motion is now ripe for review.

For the reasons stated below, Defendants' motion for summary judgment (*Doc. 50*) should be granted.

### III. Discussion:

#### A. The PLRA Makes Exhaustion Mandatory

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised that was not fully exhausted before filing a civil lawsuit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available

administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). By law, Mr. Hopkins had to follow the PCRDF's requirements for raising and exhausting his pending claims before bringing this action.[1]

### B. The PCRDF Exhaustion Policy

At all times relevant to this action, the PCRDF provided an administrative grievance process through the inmate grievance procedure. *Doc. 52-4 at 1-14*. Under the procedure, an inmate may formally grieve:

> (a.) Actions taken by staff or other inmates that have the effect of depriving the inmate of a right, service, or privilege; (b.) Allegations of abuse, neglect, or mistreatment by staff or other inmates; (c.) Any other matter the inmate believes to be illegal, a violation department rules and regulations, or unconstitutional treatment or condition.

*Id. at 1-2*.

Under the PCRDF grievance procedure, an inmate must first attempt to verbally resolve a grievance through the unit deputy. *Id. at 4*. If the problem is not resolved informally, the inmate must file a written (formal) grievance if the inmate

---

[1] There are exceptions to the exhaustion requirement, but they are few and narrow in scope. For example, an inmate's subjective belief about the futility of the exhaustion process or his misunderstanding about the process are irrelevant in determining whether administrative procedures are available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

wishes to exhaust his grievance. *Id*. A formal grievance must be filed with the Grievance Officer or designee within 15 days after the incident or matter giving rise to the grievance. *Id*.

Within ten working days after filing a grievance, an inmate "shall" receive a written response by the Grievance Officer or designee, unless the Grievance Officer notifies the inmate of a delay. *Id*. at 6. The response "shall [s]tate the reason for the decision." *Id*. If the inmate is not satisfied with the Grievance Officer's decision, he "may" appeal to the Chief of Detention within ten working days. *Id. at 7*. The appeal must be written on the original form in the section entitled "Inmate's Appeal" and returned to the grievance box. *Id*. The Chief of Detention must respond to the appeal within five working days unless the Chief of Detention notifies the inmate of a delay. *Id*. This is the final level of the appeal process. *Id*.

### C.   Mr. Hopkins' Grievance History

Defendants submit the affidavit of James Hill, the custodian of records for the PCRDF, to support their motion. *Doc. 52-1*. Mr. Hill testifies that, between October 3, 2022, the date of Mr. Hopkins' intake at PCRDF, and December 30, 2022, the date that Mr. Hopkins filed this lawsuit, he submitted 25 requests and grievances. *Id. at 1*. Although Mr. Hopkins references Defendants Belt and Atwood in three of those grievances,[2] Mr. Hill testifies that Mr. Hopkins did not file any grievances

---

[2] On March 16, 2023, Mr. Hopkins submitted a grievance complaining that Defendants

5

related to Defendant Belt using excessive force against him or Defendants Atwood and Belt denying him medical care. *Id. at 1-2*.

In his response to Defendants' motion, Mr. Hopkins argues that Mr. Hill falsely testified that he failed to file any relevant grievances regarding the claims raised in this lawsuit in retaliation for Mr. Hopkins filing a lawsuit against Mr. Hill. *Doc. 54 at 1-2*. In addition, without any supporting evidence, Mr. Hopkins states that he filed a grievance regarding his claims against Defendants that Detention Center staff never answered. *Id*. Finally, Mr. Hopkins attaches three "grievance receipts" to his response. *Id. at 8-9*. Two of those are dated February 28, 2022, and one is dated March 23, 2022. *Id*. However, those grievances pre-date Mr. Hopkins' current incarceration at PCRDF, which began on October 3, 2022. *Doc. 52-2 at 1*.

On this record, there is no genuine issue of material fact regarding Mr. Hopkins' failure to exhaust his administrative remedies. Mr. Hopkins' unsubstantiated, self-serving allegations cannot be used to defeat summary

---

Belt and Atwood falsely testified that he was located in another unit when he sexually threatened a staff member. *Doc. 52-3 at 41*.

On May 21, 2023, Mr. Hopkins submitted a grievance regarding an inmate attack that occurred on May 28, 2023. *Id. at 52*. He explains that Defendants Belt and Atwood conspired "to attack me" by threatening to charge an inmate who was attempting to assist Mr. Hopkins with a disciplinary. *Id*.

On June 11, 2023, Mr. Hopkins submitted a grievance complaining about his need for medical treatment. *Id. at 57*. In the grievance, he states that Defendant Belt "dropped me down some stairs." *Id*. However, Mr. Hopkins does not allege that Defendant Belt either used excessive force against him or denied him adequate medical treatment in that grievance.

judgment. *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006). As a result, Defendants are entitled to judgment as a matter of law.

IV. **Conclusion**:

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 50*) be GRANTED.

2. Mr. Hopkins' claims be DISMISSED, without prejudice, based on his failure to fully exhaust his administrative remedies.

3. The Clerk be instructed to close this case.

DATED 12 January 2024.

_____
UNITED STATES MAGISTRATE JUDGE